I see that this is a very prepared court and I'm grateful for that because I'm bothered by the fact that the United States District Court and the motions panel of this court denied bail pending appeal on the grounds there was no substantial issue. I think there are some substantial issues in this case, but a ruling like that tells me perhaps I should have submitted this on the briefs. Nevertheless, I'm going to sally forth. And to me, the irony is that I think, to my way of thinking, and perhaps you disagree, which is why I throw this out here, I think possibly the most substantial issue is the second assignment of error, which has to do with trial error, with the trial judge not allowing the defendants to impeach the illegal Bengalis, trial testimonies with facts of the deplorable conditions of Bangladesh, bearing both on their motives to lie and the inherent improbabilities of the Bengalis' money story. Kagan First of all, your brief, although that was the original reason you gave for introducing a testimony, at least your opening brief seemed to suggest that there was another reason, which was – and I'm just asking you whether you're still relying on it, which is essentially that Bangladesh is so poor that these people could not have been making the payments that they claimed they were making. Yes. Two – there's two factions of this issue, and that is one of them. And I'm not abandoning that at all. If you thought I was in the gray brief, I'm certainly not. But obviously not everybody in Bangladesh is all that poor, so – Well, the average income is something like $350 per year, and I think it's one of those – you have a high – a few people with a lot of money and a whole lot of people with not very much money, I think. Anyway, I should say that my general reaction to the Bangladesh test evidence was that it was sort of creative and interesting, but I find it hard to believe that it's – I guess I need you to tell me why it was an abuse of discretion not to allow it in, or why it would have – and also why it would have made a difference, as – given the way the trial actually unfolded. Okay. Well, let me skip to that issue. I have four basic comments about the issue. Number one, the trial defense in this case was that the illegal Bengalis and each one of them lied with respect to what Chistie and Mosherf told them to do, or they claimed what Chistie and Mosherf told them to do. Right. And as I understand it, the cross-examination did a very good job of demonstrating that they were all still in this country, although they may well have been deportable, and that they had – they also had done something illegal and they had reason to be incurring favor with the government, and also that for many of them, going back to Bangladesh was not something they wanted to do. So beyond that, what was this evidence going to accomplish? Okay. Well, a big part of their story and a central part of what Chistie and Mosherf were charged with was supposedly charging these people gobs of money to assist them in getting the illegal benefits. Now, there was nothing to corroborate the Bengalis, save and except each other, and most significantly, there was not a paper trail. And the one guy, Hockey, who brought in a last-minute check, the defense was able to show that was a check that never went to a corporation owned by Chistie or any ownership interest in Chistie – with Chistie, rather. But by their verdicts of not guilty, the jury had some problems with some of these illegal Bengalis, specifically Alam and Ambia, and for reasons stated in the blue brief and the footnotes, they should have had problems with the conspiracy witnesses of Akram, Mohammed, Mominur, Rama. How about answering Judge Berzon's question? What would the evidence that you were not allowed to submit have done that was not done by cross-examination showing the motive of these people to curry favor with the government, and they didn't want to go back to Bangladesh? Are you – what would you say? Well, they were cross-examined on this issue. What issue? On the issue we're talking about. When the illegal Bengalis were cross-examined without the benefit of extrinsic evidence to prove the point, they basically ducked the issues. They danced around them. One of them said he intended to go back when he was of retirement age. And virtually none of the deplorable conditions were brought out in cross-examination that we had a couple of political prisoners as uncharged conduct witnesses who talked about that. But they, you know, they're uncharged misconduct. As far as the charged cases, the witnesses really ducked and danced around those issues, and the jury verdict in this case was odd. I mean, you have another major problem, you know, you did, which is that there were a lot of them. I mean, it's – you can believe that one person, two person, or three person lied, but how many people were there? How many witnesses were there? There were a lot more than that. I know. I think eight maybe. Right, exactly. And interestingly, they were all represented by the same lawyer, the same agency, which is an interesting fact for what it is. Obviously – I mean, the plea bargains about testifying against my clients and – Well, you're representing two defendants, which is fairly unusual as well. Right. They signed waivers of conflict in that regard. Anyway, are there any other issues you want to discuss? You know, you do not have to take up your 20 minutes, and this probably should be a 20-minute case, to be frank. Yeah. Let me talk about the first issue, which is 8 U.S.C. 1324a1a. I submit to you that that is a specific aiding and abetting statute, not only per the plain language of the statute, but also per this Court's dicta in the United States v. Angwin. But these appellants were charged under the general aiding and abetting statute of 18 U.S.C. 2, referring to 18 U.S.C. 1546a, the statute that applies to the illegal Bengalis, and the penalty of which is double that of 8 U.S.C. 1324c1. Can't the government decide what to charge? I'm aware of the basic rule of Batchelder, which, of course, is the government's position. Our position is one exception to Batchelder is where Congress clearly intends that one statute supplant the other. But then, unless you – although you keep arguing that there was no implied repeal, that has to be what you're saying. It's the only possible theory that you have. I don't think it's implied repeal. I think it's a specific intent to supplant one with the other. But it isn't. The doctrine of implied repeal means this statute does not say we're appealing that one, so it's an implied repeal. Okay. But that is what you're relying on, even though you keep saying you're not. All right. Well, 8 U.S.C. 1324a1a is part of the 1996 amendments, and it's clearly intended to govern people who advise illegal aliens and assist them in obtaining immigration benefits illegally, which is exactly what my clients are charged with doing. In the simple case where there's no smuggling, no exploitation of aliens, which is this case, Congress intended a lesser penalty, and intended half the penalty, and we fall back on the black-letter rule of Russell. This Court can't uphold a conviction in this case. But your clients did not get a very long prison term, however, did they? Well, no. In fact, Chistie is – excuse me, Mosherf is out now. He's on the house arrest part of his sentence. So it's a practical matter, would it have made a bit of difference given the guidelines? Well, it would seem to me that if you were under that statute, you would have the argument of the lesser guideline, but I have abandoned that issue because by the time the Court were to decide this case, Chistie will be out. So it seemed pointless to continue with the sentencing argument. Unless you have anything else. I do not. Thank you. Counsel? Again, you don't have to use up your time if you don't want to. Thank you, Your Honor. I'm Ron Ratio from the District of Nevada, Assistant United States Attorney. I tried this case. I wrote the brief. The issues I think that the defense framed, the Court is pretty much onto by its questions. I believe the government properly charged 1546A. We could have charged two other statutes perhaps, but we chose the best one, in our opinion, because we were talking Did it in fact make any difference given the sentence they actually got? I don't think so, Your Honor. Either one was a felony, no matter how you cut it. And whether it was a five-year or ten-year max, under the guidelines, the same guideline application would have applied. So I think that even if it had been the other statute, it really doesn't change anything. What I find interesting, though, is that the defense also points out that they thought perhaps 1324C would have been an appropriate charge, too, under Title VIII, and yet the construction provision of that particular statute in subsection C says nothing in this section shall be construed to diminish or qualify any of the penalties available for activities prohibited by this section, but proscribed as well in Title XVIII. So I don't think there was any intent by Congress for one of these statutes to supersede 1546. The next issue, of course, is credibility. Frankly, it was the first trial I've ever done in my life where I started out an opening statement saying, I'm going to call a series of witnesses who have all lied at least twice under oath and have all received some benefit from the government in order for their testimony here. Why did they all lie at least twice under oath? They had all received these documents by using the false identification. That's called getting the sting out early, right? It was going to come out. Let's get rid of it before it comes out, because this is what's going to be decided on. Our approach to the jury was, these folks are going to tell you this story. As Judge Bergeron pointed out, it wasn't one or two or three. It was like ten that came from the East Coast that didn't know each other at different times, and the stories all came together. So it becomes an issue of credibility for the jury. They knew all this. Each defendant was cross-examined, I want to say, for close to two hours apiece. Two counsel went after them time after time. Bangladesh is a nasty country. Some of the witnesses admitted it. Some of them may have danced around it. But that's a question of credibility for the jury. They were properly instructed on the law. They heard the witnesses, and there's nothing to show that the jury was wrong. So with that, unless there are any questions, I'd be willing to submit it on a brief at this point. Thank you. Very short. On the Bangladesh issue, all it asks you to do is contrast the actual offer of proof that you find in the excerpt at pages 36 through 101, summarized in the blue brief at 27 through 29, with what the trial lawyers actually were able to get out of the illegal Bengalis on cross, which I have stated in the blue brief at pages 30 and 31. And I won't say they're apples and oranges, but I'll say they're tangerines and tangellos. Really, virtually none of the deplorable conditions were brought out through those witnesses. They simply were not. And see, but aside from everything else, the deplorable conditions could be completely misleading, because we don't know how these particular people were situated within the Society of Bangladesh. I mean, they could have been, you know, among the small middle class in Bangladesh. We don't know. We don't know whether they're the starving people. We don't know that, but we do know that many of these people got to the United States, did things like lived in New York City and drove taxi cabs or waited on tables, and frankly, the probability that they would have the money to get out of the United States, I don't have enough money to fly out to Reno and then pay $20,000 to my client, as they allege, without really backup proof, which seems awful. Frankly, I didn't even see that you made that argument in district court, so. Oh, well, to the district court, no. I think the offer of proof was talking about what a horrible place Bangladesh is. It wasn't going into the specific money aspect. Right. And we have to judge his exercise of discretion by what he was asked to do. That's true. So, unless you have any further questions, I'll let you know. Thank you very much. Thank you, counsel. The case of United States v. Mosher and Christie is submitted, and we'll go to the last case of the day.
judges: Berzon, Bea, Gibson